**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:

Robert P. Young, Jr.    Michael F. Cavanagh
                        Marilyn Kelly
                        Stephen J. Markman
                        Diane M. Hathaway
                        Mary Beth Kelly
                        Brian K. Zahra

FILED MAY 15, 2012

S T A T E   O F   M I C H I G A N

SUPREME COURT

DOREEN JOSEPH,

      Plaintiff-Appellee,

v                                                   No. 142615

AUTO CLUB INSURANCE
ASSOCIATION, a/k/a A.C.I.A,

      Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

MARY BETH KELLY, J.

We granted defendant Auto Club Insurance Association's bypass application for leave to appeal in this case to determine whether the minority/insanity tolling provision of MCL 600.5851(1) applies to toll the one-year-back rule in MCL 500.3145(1) of the no-fault act. The one-year-back rule is designed to limit the amount of benefits recoverable under the no-fault act to those losses occurring no more than one year before an action is brought. Plaintiff here is seeking to recover no-fault benefits for losses dating back 32 years before she brought her action. In denying defendant's motion for

partial summary disposition, the circuit court relied on *Univ of Mich Regents v Titan Ins Co*[1] to hold that the minority/insanity tolling provision tolls the one-year-back rule. In *Regents*, this Court held that a saving provision that tolls a statute of limitations also prevents application of the one-year-back rule. *Regents* overruled *Cameron v Auto Club Ins Ass'n*[2] and *Liptow v State Farm Mut Auto Ins Co*,[3] which had held that the saving provisions at issue only tolled a statute of limitations, not statutes limiting damages.

We once again hold that the minority/insanity tolling provision, which addresses only when an action may be *brought*, does not preclude the application of the one-year-back rule, which separately limits the *amount* of benefits that can be recovered. These distinctions were recognized in Michigan law both in *Cameron* as well as several decisions of this Court that predate *Cameron*. Yet this Court's decision in *Regents* conflated these distinct concepts in order to effectuate what the *Regents* majority believed was a broader social good served by expanding the right to recover benefits beyond those allowed by law. We recognize the necessity for, and value of, stability in the law and take no pleasure in overruling a precedent of recent vintage by this Court. But *Regents* itself simply failed to apply our then recent decision in *Cameron*, resulting in a decision that patently failed to enforce the requirements of the statutes that it interpreted. Because the holding in *Regents* contravened the Legislature's clear and unambiguous language in MCL 500.3145(1) and MCL 600.5851(1), *Regents* is overruled and we reinstate

---

[1] *Univ of Mich Regents v Titan Ins Co*, 487 Mich 289; 791 NW2d 897 (2010).

[2] *Cameron v Auto Club Ins Ass'n*, 476 Mich 55; 718 NW2d 784 (2006).

[3] *Liptow v State Farm Mut Auto Ins Co*, 272 Mich App 544; 726 NW2d 442 (2006).

*Cameron*. Accordingly, we remand this case to the circuit court for entry of an order granting defendant's motion for partial summary disposition on the basis of the one-year-back rule.

## I. FACTS AND PROCEDURAL HISTORY

In June 1977, then 17-year-old plaintiff, Doreen Joseph, was involved in an automobile accident in which she suffered traumatic brain injury and quadriplegia. At the time of the accident, plaintiff had automobile insurance coverage through the Detroit Automobile Inter-Insurance Exchange, defendant's predecessor. Defendant later assumed responsibility for paying plaintiff's personal protection insurance (PIP) benefits. Since the date of plaintiff's injury, defendant has paid more than $4 million in PIP benefits for plaintiff's care.

On February 27, 2009, plaintiff filed a complaint seeking additional PIP benefits for allegedly unpaid case-management services provided by plaintiff's family members. The period for which plaintiff seeks recovery dates back to the date of plaintiff's accident in 1977. Defendant moved for partial summary disposition pursuant to MCR 2.116(C)(10), arguing that the one-year-back rule in MCL 500.3145(1) barred plaintiff's claim with respect to benefits sought for any period more than one year before the February 27, 2009, commencement date of plaintiff's action. Plaintiff responded that her "insanity" over the past 32 years had operated to toll the one-year-back rule pursuant to the minority/insanity tolling provision of MCL 600.5851(1). [4]

---

[4] The circuit court held that there exists a question of fact regarding whether plaintiff is "insane" for purposes of MCL 600.5851(1). That determination is not at issue in this appeal.

3

The circuit court denied defendant's motion for partial summary disposition, citing *Regents* for the proposition that the minority/insanity tolling provision tolls the one-year-back rule and, thus, if plaintiff is determined to be "insane," her recovery will not be limited to the year immediately preceding the filing of her complaint. Defendant filed an interlocutory application for leave to appeal in the Court of Appeals and then filed a bypass application for leave to appeal in this Court, arguing that the minority/insanity tolling provision does not apply to the one-year-back rule and that *Regents* was wrongly decided. We entered orders staying the circuit court proceedings[5] and granting defendant's bypass application to consider whether *Regents* was correctly decided.[6]

## II. STANDARD OF REVIEW

This Court reviews de novo a circuit court's decision whether to grant or deny summary disposition.[7] Similarly, we review de novo issues of statutory interpretation as questions of law.[8] Our primary goal when interpreting statutes is to discern the intent of the Legislature.[9] To do so, we focus on the best indicator of that intent, the language of the statute itself.[10] The words used by the Legislature are given their common and

---

[5] *Joseph v ACIA*, 802 NW2d 351 (Mich, 2011).

[6] *Joseph v ACIA*, 489 Mich 924 (2011).

[7] *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 720; 691 NW2d 1 (2005).

[8] *Id*.

[9] *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001).

[10] *Id*.

4

ordinary meaning.[11]   If the statutory language is unambiguous, we presume that the Legislature intended the meaning that it clearly expressed, and further construction is neither required nor permitted.[12]

Defendant moved for partial summary disposition pursuant to MCR 2.116(C)(10). Because a motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint, the circuit court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion.[13]   If the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.[14]

---

[11] MCL 8.3a; *Veenstra v Washtenaw Country Club*, 466 Mich 155, 160; 645 NW2d 643 (2002).

[12] *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

[13] *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

[14] MCR 2.116(C)(10) and (G)(4); *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

## III.  ANALYSIS

### A.  THE ONE-YEAR-BACK RULE AND THE MINORITY/INSANITY TOLLING PROVISION

This case requires that we again interpret the limitations on recovery of PIP benefits set forth in the no-fault act.  The relevant statutory provision of the no-fault act, MCL 500.3145(1), provides in pertinent part:

> An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. *However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced*.[15]

As early as 1984, this Court explained that this statutory provision contains separate and distinct limitations periods that relate both to the timing in which an action may be brought and the damages that may be recovered.[16]  Specifically, we have noted that MCL 500.3145(1)

> contains two limitations on the time for filing suit and one limitation on the period for which benefits may be recovered:
>
> "(1) An action for personal protection insurance [PIP] benefits must be commenced not later than one year after the date of accident, *unless* the

---

[15] Emphasis added.

[16] *Welton v Carriers Ins Co*, 421 Mich 571, 576; 365 NW2d 170 (1984).

6

insured gives written notice of injury or the insurer previously paid [PIP] benefits for the injury.

"(2) *If* notice has been given or payment has been made, the action may be commenced at any time within one year after the most recent loss was incurred.

"(3) Recovery is limited to losses incurred during the one year preceding commencement of the action."[17]

Accordingly, a person filing a claim for PIP benefits must do so within a year of the accident unless the insured gives written notice of injury or previously received PIP benefits from the insurer. If notice was given or payment was made, the action can be commenced within one year of the most recent loss. In any case, though, recovery is limited only to losses that have been incurred during the year before the filing of the action.

The final limitation provided in MCL 500.3145(1) is the limitation on damages known as the one-year-back rule. In *Devillers v Auto Club Ins Ass'n*, we discussed the significance of the legislative distinction between statutes of limitations and provisions that limit damages, noting that

> although a no-fault action to recover PIP benefits may be *filed* more than one year after the accident and more than one year after a particular loss has been incurred (provided that notice of injury has been given to the insurer or the insurer has previously paid PIP benefits for the injury), § 3145(1) nevertheless limits *recovery* in that action to those losses incurred within the one year preceding the filing of the action.[18]

---

[17] *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 574; 702 NW2d 539 (2005), quoting *Welton*, 421 Mich at 576.

[18] *Devillers*, 473 Mich at 574; see also *Howard v Gen Motors Corp*, 427 Mich 358, 385-387; 399 NW2d 10 (1986) (opinion by BRICKLEY, J.).

Our Legislature has also independently established, in the Revised Judicature Act (RJA),[19] a *general* tolling provision in order to aid those who are minors or legally insane. The minority/insanity tolling provision of MCL 600.5851(1) extends the time for filing suit by tolling an otherwise applicable statute of limitations.[20] MCL 600.5851(1) provides in relevant part:

> [I]f the person first entitled to make an entry or bring an action under this act is under 18 years of age or insane at the time the claim accrues, the person or those claiming under the person shall have 1 year after the disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run.

Notably, by its unambiguous terms, this provision concerns *when* a minor or person suffering from insanity may "make the entry or bring the action," and the provision is entirely silent with regard to the amount of damages recoverable once an action has been brought.[21]

## B. *CAMERON* AND ITS PROGENY

We first considered the interplay between the one-year-back rule and the minority/insanity tolling provision in *Cameron*.[22] In *Cameron*, the plaintiffs' minor son sustained a closed head injury when an automobile struck his bicycle in 1996. Six years

---

[19] MCL 600.101 *et seq.*

[20] See *Lambert v Calhoun*, 394 Mich 179, 181, 192; 229 NW2d 332 (1975).

[21] This is a point that is only relevant to statutes like the no-fault act that contain a unique one-year-back rule, which limits the right of recovery to damages incurred during the year before commencement of the action.

[22] *Cameron*, 476 Mich 55.

later, in 2002, the plaintiffs filed suit against their no-fault insurer to recover PIP benefits for attendant-care services rendered from 1996 to 1999. The plaintiffs argued that the minority/insanity tolling provision applied to toll the one-year-back rule, rendering recoverable the losses incurred between 1996 and 1999. We disagreed, holding that the minority/insanity tolling provision does not operate to toll the one-year-back rule. We explained in *Cameron*:

> By its unambiguous terms, MCL 600.5851(1) concerns when a minor or person suffering from insanity may "make the entry or bring the action." It does not pertain to the damages recoverable once an action has been brought. MCL 600.5851(1) then is irrelevant to the damages-limiting one-year-back provision of MCL 500.3145(1).[23]

That is,

> the minority/insanity tolling provision in MCL 600.5851(1), by its plain terms, only addresses when an action may be brought. Therefore, it does not apply to toll the one-year-back rule in MCL 500.3145(1) because that provision does not concern when an action may be brought but, instead, limits the amount of PIP benefits a person injured in an automobile accident may recover.[24]

In reaching this conclusion, we overruled the Court of Appeals' decision in *Geiger v Detroit Auto Inter-Ins Exch*,[25] which held that MCL 600.5851(1) applies to toll the one-year-back rule.[26] The *Geiger* panel reasoned that reading the statute in a contrary fashion

---

[23] *Id*. at 62.

[24] *Id.* at 72.

[25] *Geiger v Detroit Auto Inter-Ins Exch*,114 Mich App 283; 318 NW2d 833 (1982).

[26] By overruling *Geiger*, the dissent contends that "the *Cameron* majority upended 25 years of settled law . . . ." *Post* at 2. Aside from the fact that such "settled law" was a Court of Appeals decision and thus not binding on this Court, the dissent disregards the fundamental principle that not all precedents are deserving of equal respect. *Geiger*

9

would "severely limit the utility" of the minority/insanity tolling provision "and could deprive a person of benefits to which he would otherwise be rightfully entitled."[27]  This Court held that *Geiger*'s conclusion was not supported by the statutory texts and contravened the Legislature's unambiguous directives, compelling its overruling.  As *Cameron* explained:

> [W]e must assume that the thing the Legislature wants is best understood by reading what it said. Because what was said in MCL 500.3145(1) and MCL 600.5851(1) is clear, no less clear is the policy. Damages are only allowed for one year back from the date the lawsuit is filed. We are enforcing the statutes as written.  While some may question the wisdom of the Legislature's capping damages in this fashion, it is unquestionably a power that the Legislature has under our Constitution.[28]

---

ignored the clear and unambiguous language of MCL 500.3145(1) and MCL 600.5851(1) and was, instead, grounded on its own speculative policy considerations.  Because *Cameron* closely analyzed the actual statutory language and did not allow policy considerations to dictate the result, it is simply deserving of more regard.  Thus, *Cameron* did not "upend 25 years of settled law"; stated in more accurate terms, the *Cameron* majority was compelled to overrule nonbinding precedent premised on a faulty legal analysis.

Contrary to the dissent, our conclusion that *Cameron* is "better reasoned" is not an altogether subjective determination.  Instead, it is based on a straightforward reading of both *Cameron* and *Geiger*, which, even the dissent can hardly deny, would lead almost any reader to conclude that *Cameron* is focused principally on the statutory language in dispute, while *Geiger* is focused principally on policy considerations.  Because such statutory language constitutes the best indicator of legislative intent, we believe that *Cameron* is "better reasoned."  Although we appreciate that our dissenting colleagues are free to disagree with this assessment, judgments nonetheless must be made.  And we have sought to exercise our own best judgment in assessing the precedents before us.

[27] *Geiger*, 114 Mich App at 291.

[28] *Cameron*, 476 Mich at 63 (citation omitted).

10

After our decision in *Cameron*, the Court of Appeals in *Liptow*[29] applied *Cameron*'s reasoning to hold that separate tolling provisions for state political subdivisions[30] do not preclude the application of the one-year-back rule. The panel reasoned that the plain statutory text of MCL 600.5821(4) indicates that the Legislature intended to exempt the state from statutes of limitations when bringing an action to recover public funds. As in *Cameron*, the Court recognized that the one-year-back rule is not a statute of limitations, but a damages-limiting provision. Accordingly, because MCL 600.5821(4) does not address damages limitations, the Court of Appeals determined that it has no effect on the one-year-back rule.[31] Thus, *Liptow* held that while a political subdivision may *bring an action* at any time pursuant to MCL 600.5821(4), it cannot *recover benefits* for any portion of the loss incurred more than one year before the date on which the action was commenced.

## C. *REGENTS*

Four years after *Cameron* and *Liptow*, in *Regents*, this Court again considered whether a saving provision tolling a statute of limitations similarly tolls the one-year-

---

[29] *Liptow*, 272 Mich App 544.

[30] See MCL 600.5821(4), which provides in pertinent part:

> Actions brought in the name of . . . any political subdivision of the state of Michigan . . . for the recovery of the cost of maintenance, care, and treatment of persons in hospitals . . . are not subject to the *statute of limitations* and may be *brought* at any time without limitation, the provisions of any statute notwithstanding. [Emphasis added.]

[31] *Liptow*, 272 Mich App at 555-556.

11

back rule.[32]  In *Regents*, the plaintiffs brought an action seeking payment from the defendant insurer for the full cost of medical treatment provided to the defendant's insured who had been treated at the university's hospital following an automobile accident.  The circuit court held that the one-year-back rule barred the plaintiffs from recovering any portion of the loss incurred more than one year before commencement of the action, and the Court of Appeals affirmed.  In a narrowly divided decision, this Court reversed the decisions of the lower courts and overruled the recent decisions in *Cameron* and *Liptow*, holding, in part, that the minority/insanity tolling provision does, in fact, toll the one-year-back rule.  The *Regents* Court, essentially adopting the dissenting position from *Cameron*, held that "the 'action' and 'claim' preserved by [the minority/insanity tolling provision] include the right to collect damages" because "the right to bring an action would be a hollow one indeed if a plaintiff could not recover damages."[33]  According to *Regents*, the one-year-back rule in MCL 500.3145(1) is inapplicable to a statute that preserves a plaintiff's right to bring an action.  That is, because MCL 600.5851(1) preserves the rights of minors and insane persons by granting them one year after their disabilities have been removed to bring their civil actions, MCL 600.5851(1) precludes application of the one-year-back rule.

Three justices strongly dissented from the decision to overrule *Cameron* and erase the long-recognized distinction between statutes of limitations and the damages-limiting

---

[32] *Regents*, 487 Mich 289.

[33] *Id.* at 299.

provision of the no-fault statute. The dissenting justices explained that because the one-year-back rule "serves only as a limitation on the recovery of benefits" and "does not define a period within which a claimant may file a cause of action," the one-year-back rule "lies outside the scope of what is affected by the RJA's minority/insanity tolling provision."[34] By holding to the contrary, the dissenting justices concluded that the majority had failed to enforce as written the unambiguous language of the one-year-back rule, and had attempted instead to "discern the purpose of the statute from something other than its actual language."[35]

## D. *REGENTS* WAS WRONGLY DECIDED

We believe that the ruling in *Regents* was erroneous for the simple reason that the statutory texts of MCL 500.3145(1) and MCL 600.5851(1) plainly do not support it. MCL 600.5851(1) gives minors and insane persons one year after the removal of their disabilities "to make the entry or bring the action." By its very terms, the minority/insanity tolling provision is a timing mechanism specifying *when* a minor or insane person may bring his or her claim; it places no limitation on, and makes no reference to, *the amount of damages* that can be recovered after the action has been brought. The one-year-back rule in MCL 500.3145(1), on the other hand, forecloses a claimant from recovering "benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced." By its very terms, then, the one-

---

[34] *Id*. at 333 (MARKMAN, J., dissenting).

[35] *Id*. at 336.

year-back rule is a damages-limiting provision because it limits a claimant's recovery to those losses incurred during the year before the filing of the action.

By concluding that the minority/insanity tolling provision of MCL 600.5851(1) operates to toll the one-year-back rule in MCL 500.3145(1), *Regents* failed to recognize the critical distinction between having the general right to commence an action and the limitation on the right to recover no-fault benefits for losses occurring more than one year before the filing of the action. Indeed, *Regents* impermissibly interpreted the phrase "bring the action" in MCL 600.5851(1) as conferring on a claimant the right to "bring the action and recover an unlimited amount of damages," an interpretation which cannot be extracted from the plain and unambiguous statutory text. The dissenting justices in *Regents* recognized this distinction, contrasting the one-year-back rule, which provides that the claimant "may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced," with MCL 600.5821(4), which provides that an action by the state or one of its political subdivisions "may be brought at any time without limitation." The dissenting justices in *Regents* properly observed:

> [W]hen these two provisions are read together, it is clear that while a political subdivision may *bring* an action at any time, it cannot *recover* benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced. In other words, MCL 600.5821(4), which pertains only to *when* an action may be commenced, does not preclude the application of the one-year-back rule, which only limits *how much* can be recovered after the action has been commenced.[36]

---

[36] *Id*. at 339.

This interpretation is merely an extension of the same legal rationale applied in *Cameron*, in which the Court distinguished the plain language of the one-year-back rule from the plain language of the minority/insanity tolling provision.

Again, the rules of statutory interpretation mandate that we give effect to the Legislature's intent, relying on the plain language of the no-fault statute itself. If the statutory language is unambiguous, we must presume that the Legislature intended the meaning it clearly expressed and further construction is neither required nor permitted.[37] As is evident from its holding, the interpretation advanced by *Regents* superseded the Legislature's explicit intent that recovery of PIP benefits be limited to losses incurred within one year before the date on which an action is filed. The statutory provision containing the one-year-back rule employs plain, clear, and simple language. The minority/insanity tolling provision sets forth an equally simple concept, tolling the time in which an action may be commenced after a person's disability is removed. This tolling provision, however, is silent regarding the amount of damages a claimant may recover and, accordingly, there is no support for the conclusion that that minority/insanity tolling statute precludes application of the no-fault act's one-year-back rule. Because *Regents* reached such a conclusion, it was wrongly decided.

Application of the *Regents* Court's interpretation of the one-year-back rule to this case illustrates how that decision defeats the very purpose of the rule. Under *Regents*, plaintiff would be permitted to recover PIP benefits for those losses incurred during the 32 years *predating* the filing of her action on February 27, 2009, in addition to those

---

[37] *Sun Valley Foods*, 460 Mich at 236.

losses incurred *after* that date and continuing for the remainder of her life. Permitting recovery in that manner ignores the plain language of the one-year-back rule, which limits plaintiff's recovery to those losses incurred within one year before February 27, 2009, while still allowing additional recovery for all losses incurred after that date. Although the minority/insanity tolling provision may certainly toll myriad statutory provisions that contain a statute of limitations, it cannot toll the one-year-back rule of MCL 500.3145(1) because the one-year-back rule is not a statute of limitations in that it does not limit the period of time within which a claimant may file an action; rather, the one-year-back rule places a limitation on the amount of damages a claimant is entitled to recover. Furthermore, the one-year-back rule does not serve those purposes typically associated with a statute of limitations because it does not operate to cut off a claim or bar the action or the recovery; it simply limits the compensation available to the claimant.[38]      Because the no-fault act's one-year-back rule and the RJA's

---

[38] The dissent characterizes our interpretation of MCL 500.3145(1) and MCL 600.5851(1) as "tend[ing] toward the absurd." *Post* at 4.

There is no need for this Court to address the "absurd results" doctrine in this case because there is simply no result here that is absurd. Indeed, the dissent's argument that this construction produces an absurd result was fully considered and rejected in *Cameron*. As reiterated by the dissenting justices in *Regents*, "'[i]n choosing to make no-fault insurance compulsory for all motorists, the Legislature has made the registration and operation of a motor vehicle inexorably dependent on whether no-fault insurance is available at fair and equitable rates.'" *Regents*, 487 Mich 346-347, (MARKMAN, J., dissenting), quoting *Shavers v Attorney General*, 402 Mich 554, 599; 267 NW2d 72 (1978) (alteration in original). It therefore bears repeating that it is certainly quite *possible* that in a system that provides mandatory unlimited lifetime benefits, the Legislature intended to impose a limitation on recovery of no-fault benefits in order to make no-fault insurance affordable. This limitation is not only sensible, but necessary for the survival of no-fault system.

minority/insanity tolling provision serve manifestly different purposes and function independently of each other, the one-year-back rule is not the subject of tolling under the minority/insanity tolling provision.  And this proper interpretation comports both with the plain language of the statute and the legislative purpose of keeping insurance premiums at affordable rates while providing victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses.[39]

### E.  STARE DECISIS

Having concluded that *Regents* was wrongly decided, we must decide whether stare decisis nevertheless compels our adherence to its holding.  The test for determining whether stare decisis compels the continued adherence to a precedent is set forth in *Robinson v Detroit*[40] and calls for us to examine, among other factors, "(a) whether the

---

Insofar as the dissent asserts that it "defies common sense" to think "[t]hat the Legislature wanted to grant a minor or insane person the right to prove his or her damages in a court of law while lacking any opportunity to be awarded them," *post* at 4, we note that the statutory language plainly does not confer on a claimant a right to prove and recover an unlimited amount of damages.  Instead, the plain language merely confers a right, under certain circumstances, to bring an action despite the period of limitations having expired.  The dissent utterly fails to recognize that the one-year-back rule does not operate to preclude a claimant from recovering *any* damages; rather, a claimant will find himself or herself without any recovery as a result of the one-year-back rule's operation only if the claimant has not suffered any losses within the one year immediately preceding the filing of the action.  Contrary to the dissent, "that this result will occur 'only' in some circumstances," *post* at 4 n 11, hardly constitutes our only response to its claim of "absurdity."  As previously explained, it is possible that the Legislature chose to impose a limitation on the recovery of no-fault benefits to ensure the financial integrity of the no-fault system.  See also *Regents*, 487 Mich at 346-347 (MARKMAN, J. dissenting).

[39] See, e.g., *Tebo v Havlik*, 418 Mich 350, 366; 343 NW2d 181 (1984); *Celina Mut Ins Co v Lake States Ins Co*, 452 Mich 84, 89; 549 NW2d 834 (1996); *O'Donnell v State Farm Mut Auto Ins Co*, 404 Mich 524, 547; 273 NW2d 829 (1979).

[40] *Robinson v Detroit*, 462 Mich 439, 464-468; 613 NW2d 307 (2000).

earlier decision was wrongly decided, and (b) whether overruling such decision would work an undue hardship because of reliance interests or expectations that have arisen."[41]

First, as discussed previously, *Regents* was wrongly decided for the simple reason that it ignored the Legislature's clear and unambiguous directives in MCL 500.3145(1) and MCL 600.5851(1) by failing to enforce these statutory provisions as written. Rather than grounding its analysis on the proper and historically accepted interpretation of the one-year-back rule, the *Regents* decision appears to have focused on the majority's concern that a plaintiff allowed to bring a suit under the minor/insanity tolling provision would be precluded by the one-year-back rule from recovering all the damages that might otherwise be permitted outside the no-fault context. However, it is the Legislature's enactment of the no-fault act's one-year-back rule that operates to limit the recovery of damages incurred more than one year before an action is commenced, not our interpretation of the minority/insanity tolling provision.

With regard to reliance interests, "the Court must ask whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations."[42] In discussing this factor, the *Regents* Court explained: "*Cameron* is of recent vintage, having been decided a mere four years ago. Hence, reliance on its

---

[41] *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 757; 641 NW2d 567 (2002), citing *Robinson*, 462 Mich at 464-468; see also *Mitchell v W T Grant Co*, 416 US 600, 627-628; 94 S Ct 1895; 40 L Ed 2d 406 (1974) (Powell, J., concurring).

[42] *Robinson*, 462 Mich at 466.

holding has been of limited duration."[43]  *Regents* is of even more recent vintage than was *Cameron*, having been decided a mere 21 months ago.  Certainly, *Regents* has not "become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would produce . . . practical real-world dislocations"[44] such that reliance interests will be disrupted.  While we view the duration of a decision from this Court as important, we believe the foremost indicator that reliance interests weigh in favor of overruling *Regents* is the plain language of the statutes because it is the unambiguous statutory text that guides the citizenry and their behavior.  "This is the essence of the rule of law: to know in advance what the rules of society are."[45]  As we have explained:

> [I]f the words of the statute are clear, the actor should be able to expect, that is, rely, that they will be carried out by all in society, including the courts.  In fact, should a court confound those legitimate citizen expectations by misreading or misconstruing a statute, it is that court itself that has disrupted the reliance interest.  When that happens, a subsequent court, rather than holding to the distorted reading because of the doctrine of stare decisis, should overrule the earlier court's misconstruction.  The reason for this is that the court in distorting the statute was engaged in a form of judicial usurpation that runs counter to the bedrock principle of American constitutionalism, i.e., that the lawmaking power is reposed in the people as reflected in the work of the Legislature, and, absent a constitutional violation, the courts have no legitimacy in overruling or nullifying the people's representatives.[46]

---

[43] *Regents*, 487 Mich at 305.

[44] *Robinson*, 462 Mich at 466.

[45] *Id.* at 467.

[46] *Id.*

19

Because *Regents* strayed considerably from the statutory language, it undermined the reliance interest that the people of this state have with regard to that language and with regard to a Court that is committed to upholding such language. As a result, it is this Court's duty to restore such reliance interests by restoring the law to mean what its language plainly states—a no-fault "claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced."[47]

The one-year-back rule codifies an integral part of the legislative compromise that is the no-fault act, and invalidating that compromise will threaten the continued fiscal soundness of our no-fault system. Given that Michigan is the only state with a no-fault automobile-injury reparations scheme with mandatory, unlimited, lifetime medical benefits, the Legislature adopted a unique approach to defining the temporal limitations for filing suit without allowing open-ended liability or time-barring claims before they accrue. The Legislature addressed this problem by enacting the one-year-back rule, which limits recovery to losses incurred within one year before suit was filed. Thus, the creation of MCL 500.3145(1) was the Legislature's reasonable and simple approach to resolving the problem of allowing a reasonable amount of time for pursuing a claim while protecting the fiscal integrity of the no-fault system. However, under the *Regents* interpretation of the one-year-back rule, not only is a claimant permitted to recover those losses incurred after the date on which the action was filed, but recovery also extends to those losses incurred any number of years before the filing date. Permitting a claimant to

---

[47] MCL 500.3145(1).

20

recover all losses incurred both before and after an action is filed, without any limitation, would nullify this legislative compromise and render the no-fault system unsustainable.

For these reasons, we overrule *Regents* and "return the law, as is our duty, to what we believe the citizens of this state reading these statutes at the time of enactment would have understood [them] to mean."[48] We are mindful of the importance of stability and continuity in the law and approach with great caution a decision to overrule precedent, but to allow the interpretation of MCL 500.3145(1) and MCL 600.5851(1) set forth in *Regents* to stand would result in the endorsement of a decision that utterly failed to enforce the requirements of the very statutes it purported to interpret.

Because the plain and unambiguous language of MCL 500.3145(1) can only be interpreted as limiting the amount of PIP benefits recoverable to those losses incurred within one year before the date the lawsuit is filed, which was the same interpretation advanced by the *Cameron* majority, we reinstate our previous decision in *Cameron*.

## F. APPLICATION

In this case, plaintiff filed her complaint on February 27, 2009, seeking recovery of PIP benefits for losses dating back 32 years. While plaintiff contends that, in light of her alleged insanity, the minority/insanity tolling provision tolls the one-year-back rule, rendering any losses incurred from the date of plaintiff's 1977 accident recoverable, we conclude otherwise. The minority/insanity tolling provision of MCL 600.5851(1), which concerns when an action may be commenced, does not render inoperable the one-year-back rule, which only limits how much can be recovered after the action has been

---

[48] *Robinson*, 462 Mich at 468.

21

commenced. Consequently, the one-year-back rule does not fall within the purview of what is intended to be tolled by the minority/insanity tolling provision. Accordingly, plaintiff's recovery is limited to losses incurred on or after February 27, 2008.

## IV. CONCLUSION

The minority/insanity tolling provision in MCL 600.5851(1) does not apply to toll the one-year-back rule in MCL 500.3145(1) because the one-year-back rule is a damages-limiting provision and does not concern when an action may be brought. These two, distinct statutory provisions serve different purposes and by their express language operate separately. Because the decision in *Regents* ignored the plain statutory directive, it is hereby overruled and *Cameron* is reinstated.[49] Accordingly, we reverse the decision of the circuit court denying defendant's motion for partial summary disposition and remand this case to that court for entry of partial summary disposition in defendant's favor.

Mary Beth Kelly
Robert P. Young, Jr.
Stephen J. Markman
Brian K. Zahra

---

[49] The *Regents* Court overruled *Liptow* on the sole basis that it relied on *Cameron*. Because *Cameron* has now been reinstated, the justification for overruling *Liptow* is no longer controlling law.

22

STATE OF MICHIGAN

SUPREME COURT

DOREEN JOSEPH,

      Plaintiff-Appellee,

v                                      No. 142615

AUTO CLUB INSURANCE
ASSOCIATION, a/k/a A.C.I.A.,

      Defendant-Appellant.

_____

MARILYN KELLY, J. (*dissenting*).

Today's decision is this Court's third ruling on the same issue in six years. Yet nothing accounts for its going back and forth on the issue—no new or revised legislation or social upheaval—except changes in the composition of the Court itself.

The majority overrules *Univ of Mich Regents v Titan Ins Co*[1] and reinstates the rule from *Cameron v Auto Club Ins Ass'n*.[2] *Cameron* changed 25 years of settled law[3] and held that the saving provision in MCL 600.5851(1) for minors and insane persons does not preclude the application of the one-year-back rule in MCL 500.3145(1). I authored the majority opinion in *Regents* and continue to believe that it correctly decided this issue. Thus, I would reaffirm our decision in *Regents* and respectfully deplore its demise.

---

[1] *Univ of Mich Regents v Titan Ins Co*, 487 Mich 289; 791 NW2d 897 (2010).

[2] *Cameron v Auto Club Ins Ass'n*, 476 Mich 55; 718 NW2d 784 (2006).

[3] See *Geiger v DAIIE*, 114 Mich App 283; 318 NW2d 833 (1982).

Contrary to the majority's conclusion, MCL 600.5851(1) is not "entirely silent with regard to the amount of damages recoverable once an action has been brought."[4] Rather, as I stated in *Regents*:

> MCL 600.5851(1) does not create its own independent cause of action. It must be read together with the statute under which the plaintiff seeks to recover. In no-fault cases, for example, MCL 600.5851(1) must be read together with MCL 500.3145(1). Doing so, the statutes grant infants and incompetent persons one year after their disability is removed to "bring the action" "for recovery of personal protection insurance benefits . . . for accidental bodily injury . . . ." On the basis of its language, MCL 600.5851(1) supersedes all limitations in MCL 500.3145(1), including the one-year-back rule's limitation on the period of recovery.[5]

The majority correctly asserts that our decisions predating *Cameron* recognized that MCL 500.3145(1) contains two limitations on the time for filing suit and one limitation on the period of recovery.[6] It attempts to use that uncontroversial point, however, to characterize *Cameron* as an uncontroversial, predetermined, and straightforward application of our precedent. The characterization is inaccurate.

The significant point is that *Cameron* was the first decision in which this Court recognized the distinction between the limitations in MCL 500.3145(1) *and* applied them differently. In so doing, the *Cameron* majority upended 25 years of settled law and drew a distinction that even the defendant did not initially ask it to draw.[7] These simple facts

---

[4] *Ante* at 8.

[5] *Regents*, 487 Mich at 298.

[6] See *ante* at 6-7, citing *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 574; 702 NW2d 539 (2005), and *Welton v Carrier Ins Co*, 421 Mich 571, 576; 365 NW2d 170 (1984).

[7] See *Cameron*, 476 Mich at 88-90 (CAVANAGH, J., dissenting) (noting that the defendant initially argued that MCL 600.5851(1) should not apply to any of the limitations in MCL

call into doubt the majority's contentions that *Cameron* was "compelled to overrule nonbinding precedent"[8] and that *Regents* "ignored the Legislature's clear and unambiguous directive[] in MCL 500.3145(1) . . . ."[9] If the Legislature's directive were truly so clear and unambiguous, why did the prevailing interpretation of MCL 500.3145(1) go unchallenged for nearly 25 years?

---

500.3145(1), but that the defendant eventually devised the alternative argument that, even though MCL 600.5851(1) saved the plaintiff's right to file suit, the one-year-back rule nevertheless prevented the plaintiff from recovering any damages that were incurred more than a year before the date of filing suit).

[8] *Ante* at 10 n 26. The majority also repeats a theme originating from Justice MARKMAN's concurrence in *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 226; 731 NW2d 41 (2007) (MARKMAN, J., concurring), that "not all precedents are built alike" because some are "better reasoned." See *ante* at 9 n 26. I have no doubt the majority believes that *all* of its decisions overruling previous cases are better reasoned than its predecessors'; otherwise, overruling those cases would seem foolish indeed. But any establishment of a *hierarchy* of precedents is inherently flawed because whether one decision is better reasoned than another is "undoubtedly in the eye of the beholder." *Regents*, 487 Mich at 303 n 28. Given the subjective nature of this "better reasoned" inquiry, such an approach would serve no purpose other than to shield the majority's allegedly better-reasoned precedents from scrutiny.

The majority claims that this inquiry is not subjective because, given that *Cameron* focused principally on the statute's language, not "policy considerations," it is objectively "better reasoned" than *Geiger*. Even accepting the majority's characterization, this assertion is flawed. An objective person reading an absurd decision that is based on a seriously strained reading of statutory language (*Cameron*) might reasonably find a contrary decision primarily focused on "policy considerations" (*Geiger*) to be "better reasoned." The majority's disdain for policy considerations in favor of a focus on statutory language that it inevitably determines is "clear and unambiguous"—even when it is not—does not an objective determination make.

Finally, it appears that, unlike the majority, the Legislature did not consider *Geiger* to be "premised on a faulty legal analysis." *Ante* at 10 n 26. It did not supersede *Geiger* by amending the applicable statutes from 1982 to 2006.

[9] *Ante* at 18.

As observed by the dissenting opinions in *Cameron*, the majority's interpretation of MCL 600.5851(1) and MCL 500.3145(1) in *Cameron* and this case tends toward the absurd.[10] That the Legislature wanted to grant a minor or insane person the right to prove his or her damages in a court of law while lacking any opportunity to be awarded them defies common sense. Yet under the *Cameron* regime restored today, many claims supposedly "saved" by MCL 600.5851(1) will be disposed of in precisely that fashion.[11] This result creates a false promise. I cannot conclude that the Legislature intended such a promise.

I dissent from the majority's decision to overrule *Regents* and reinstate the rule from *Cameron* that MCL 600.5851(1) does not preclude application of the one-year-back rule in MCL 500.3145(1). I would hold that MCL 600.5851(1) saves a minor or insane person's "claim," which includes the right to recover all of his or her personal protection insurance benefits.

> Marilyn Kelly
> Michael F. Cavanagh
> Diane M. Hathaway

---

[10] *Cameron*, 476 Mich at 103 n 12 (CAVANAGH, J., dissenting); *id*. at 109-130 (KELLY, J., dissenting).

[11] The majority's response to this obvious absurdity is that it will "only" occur if the injured person has suffered no losses in the year preceding the filing of the action. The majority's speculation that this result will occur "only" in some circumstances does nothing to undercut its absurdity. And it will provide cold comfort for those caught in this judicially created trap.

4